IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ENCOMPASS INSURANCE COMPANY,

    Plaintiff,                      17cv0125
                                        ELECTRONICALLY FILED
    v.

STONE MANSION RESTAURANT,
INCORPORATED,

    Defendant.

**MEMORANDUM OPINION**

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint for contribution which was filed pursuant to Fed. R. Civ. P. 12(b)(6). Doc. no. 7. Defendant filed an accompanying Brief (doc. no. 8) and Plaintiff filed a Response in Opposition to the Motion to Dismiss (doc. no. 13) to which Defendant filed a Reply. Doc. no. 15. The matter is now ripe for adjudication and Defendant's Motion to Dismiss (doc. no. 4) will be granted for the reasons set forth in greater detail below.

### I.    Standard of Review

Under Rule 12(b)(6), a Complaint must be dismissed for "failure to state a claim upon which relief can be granted." Detailed factual pleading is not required – Rule 8(a)(2) calls for a "short and plain statement of the claim showing that the pleader is entitled to relief" – but a Complaint must set forth sufficient factual allegations that, taken as true, set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a showing of probability that a claim has merit, *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 556 (2007), but it does require that a pleading show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Determining the plausibility of an alleged claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (In reference to third step, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.").

When adjudicating a Motion to Dismiss for failure to state a claim, the Court must view all of the allegations and facts in the Complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the Court need not accept inferences or conclusory allegations

that are unsupported by the facts set forth in the complaint. See *Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that District Courts "must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions"). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler,* 578 F.3d at 212.

In short, a Motion to Dismiss should be granted if a party fails to allege facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**II.     Background**

    **a. The Underlying State Court Lawsuit**

Encompass Insurance Company ("Encompass"), Plaintiff herein, an automobile insurance carrier, paid $600,000.00 on a personal injury claim to Helen Hoey ("Hoey"). Encompass' insured, Brian Viviani ("Viviani"), was the cause of a one-car motor vehicle accident which left Viviani dead and his passenger, Hoey, injured.

Almost two years after the accident occurred, Hoey filed a lawsuit against Viviani's estate in the Court of Common Pleas of Allegheny County at docket no. GD-13-004894.

Viviani's estate attempted to join Stone Mansion Inc. ("Stone Mansion"), Defendant herein. See Motion for Leave to Join Additional Defendant, filed 9/19/2014 at GD-13-004894. Hoey objected to Viviani's Motion for Leave to Join Stone Mansion, claiming that Viviani's attempt to join Stone Mansion was late. See Preliminary Objections to Motion for Leave to Join, filed 9/19/2014 at GD-13-004894. Hoey noted that the Complaint which was filed in July of 2013, contained allegations that specifically stated that Viviani was driving while under the influence of alcohol. Id. Also, Hoey's Preliminary Objections noted that during her deposition she identified Woodside Grille, owned by Stone Mansion, as the bar which served Viviani on the night of the accident; but, despite her clear identification of the bar in question, more than 60 days elapsed from the date of her identification of the bar to the date the Motion for Joinder was filed. Id.

The Court of Common Pleas sustained Hoey's Preliminary Objections, thereby precluding Viviani from joining Stone Mansion as a defendant in the underlying lawsuit. See Order of Court, filed 9/22/2014 at GD-13-004894. Hoey settled with Viviani's estate prior to trial. Encompass paid $600,000.00 in settlement proceeds to Hoey on behalf of Viviani.

      **b. The Current Lawsuit**

Encompass brought the instant action to recover at least some of what it paid to Hoey on Viviani's behalf. Encompass filed the instant lawsuit in state court (which Stone Mansion removed to this Court) in an attempt to recover from Stone Mansion. Encompass filed a Motion for Remand (doc. no. 3) which this Court denied. See doc. no. 12.

Stone Mansion filed a Motion to Dismiss this case (doc. no. 7), to which Encompass filed a Response in Opposition. Doc. no. 13. Stone Mansion filed a Reply. Doc. no. 15. The premise

of Stone Mansion's Motion to Dismiss is that no cognizable claim exists against it as pled by Encompass.

In the Complaint in the instant matter, Encompass asserts a claim for contribution under Pennsylvania's Uniform Contribution Among Tortfeasors Act ("UCATA"). See doc. no. 1-2, ¶¶ 37-52. In a nutshell, Encompass alleges that on the night of the accident, Stone Mansion served Viviani alcohol while he was visibly intoxicated in violation of a Pennsylvania liquor law, making Stone Mansion a proximate cause of Viviani's accident and Hoey's injuries. Id., at ¶¶ 42-45.

Encompass further alleges that Stone Mansion is a joint tortfeasor with Encompass' insured, Viviani, with respect to Hoey's injuries. Id., at ¶¶ 46-47. Encompass claims that because it settled the lawsuit brought by Hoey, paid her $600,000.00, and in exchange, obtained a general release from her, Encompass has the right to recover contribution from Stone Mansion under Pennsylvania's UCATA. Id., at ¶¶ 48-52.

Stone Mansion's Brief in support of its Motion to Dismiss concedes that <u>if</u> there is a cognizable claim for contribution, then Pennsylvania's UCATA would "provide the vehicle" by which contribution could be obtained. Stone Mansion argues that a cognizable claim between itself and Encompass does <u>not</u> exist; and thus, argues that the UCATA never comes into play. Doc. no. 8, p. 3.

Stone Mansion contends that the section of Pennsylvania's liquor code upon which the underlying claim against Stone Mansion is predicated, prohibits Encompass from recovering contribution from Stone Mansion. Id. Stone Mansion argues that Encompass is not seeking damages on account of harm inflicted upon Encompass itself, but rather on behalf of Hoey, even though Hoey did not make any claim on behalf of herself against Stone Mansion. Id.

Encompass counters by essentially arguing that it "stands in the shoes" of Viviani as a result of its $600,000.00 payment, a fact which Stone Mansion concedes. Doc. no. 13, p. 5. Encompass next contends that by operation of the UCATA, Stone Mansion and Viviani were joint tortfeasors such that Viviani, "and by extension Encompass," is entitled to contribution from Stone Mansion for the $600,000.00 payment made by Encompass. Id.

Stone Mansion replies that Encompass needs to "stand in the shoes" of Hoey (not Viviani), in order to trigger the application of the section of the Pennsylvania liquor code, which, as previously argued, provides the basis from which a liquor licensee such as Stone Mansion can be liable. Doc. no. 15, p. 3. Stone Mansion explains that only injured third parties (like Hoey) can recover from a liquor licensee (like Stone Mansion) for injuries inflicted upon them. Id.

### III. Discussion

#### a. Pennsylvania's Liquor Code

Pennsylvania's liquor code, often referred to as the Dram Shop Act, prohibits licensees from selling liquor or malt or brewed beverages to visibly intoxicated persons. One section of the Dram Shop Act reads:

> The term "licensee," when used in this section, shall mean those persons licensed under the provisions of Article IV, unless the context clearly indicates otherwise.
>
> It shall be unlawful--
>
> Furnishing Liquor or Malt or Brewed Beverages to Certain Persons. For any licensee . . . to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any minor: Provided further, That notwithstanding any other provision of law, no cause of action will exist against a licensee . . . for selling, furnishing or giving any liquor or malt or brewed beverages or permitting any liquor or malt or brewed beverages to be sold, furnished or given to any insane

> person, any habitual drunkard or person of known intemperate habits unless the person sold, furnished or given alcohol is visibly intoxicated or is a minor.

47 P.S. § 4-493. Another section of the Dram Shop Act, and the section at issue in this case, reads as follows:

> No licensee shall be liable to third persons on account of damages inflicted upon them off of the licensed premises by customers of the licensee unless the customer who inflicts the damages was sold, furnished or given liquor or malt or brewed beverages by the said licensee or his agent, servant or employe[e] when the said customer was visibly intoxicated.

47 P.S. § 4-497 (1987). "A violation of the Dram Shop Act is deemed negligence *per se*." *Johnson v. Harris*, 615 A.2d 771, 775 (Pa. Super. 1992).

Since its inception, Pennsylvania courts have considered the implications of the Dram Shop Act. "Section 4-497 is clearly a limiting provision designed to specifically shield licensees from liability to third parties except in those instances where the patron served was visibly intoxicated." *Detwiler v. Brumbaugh*, 656 A.2d 944, 946 (Pa. Super. 1995). "It is clear that Section 4-497 acts as a shield restricting liability instead of a provision defining where it is to apply." *Id.* Section 4-497 "does not create a cause of action against a licensee but in fact limits the extent of a licensee's liability." *Id.* See also *Rivero v. Timblin,* 12 Pa. D. & C. 5th 233, 251 (Lancaster County, 2010) ([T]he case law is clear that the Dram Shop Act does not give rise to a statutory civil cause of action but rather it imposes a duty upon the defendant-licensees, the violation of which is negligence *per se* and gives rise to an action in tort.) (internal quotations and citations omitted).

### b. Statutory Construction

Pennsylvania relies upon its Statutory Construction Act to interpret a statute. See 1 Pa.C.S.A. § 1921. Under this Act:

> (a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
>
> (b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
>
> (c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
>> (1) The occasion and necessity for the statute.
>>
>> (2) The circumstances under which it was enacted.
>>
>> (3) The mischief to be remedied.
>>
>> (4) The object to be attained.
>>
>> (5) The former law, if any, including other statutes upon the same or similar subjects.
>>
>> (6) The consequences of a particular interpretation.
>>
>> (7) The contemporaneous legislative history.
>>
>> (8) Legislative and administrative interpretations of such statute.

*Id.*

Turing to the above-quoted section of the liquor code (Section 4-497), the words are clear and free from all ambiguity. Given the unambiguous wording of Section 4-497, this provision shields liquor licensees from liability caused by intoxicated patrons except where it is proven that the liquor licensee provided alcohol to a visibly intoxicated patron who, in turn, causes a third party to sustain injuries away from the licensee's premises. As stated most succinctly in *Detwiler, supra*, "[t]his section clearly imposes a duty on those parties identified to refrain from selling liquor to a visibly intoxicated individual." 656 A.2d at 946. This narrow code section allows recovery against a liquor license holder, only when: (1) certain circumstances are present,

and (2) the specific person alleging violation of this code section belongs to the class of persons the section was designed to protect.

### c. Application of the Law

Because a violation of the Dram Shop Act is negligence *per se*, before liability may be imposed on the liquor-license holder, the injured person must establish that s/he is part of the protected class of "third persons" the Dram Shop Act is designed to safeguard. *See McCloud v. McLaughlin,* 837 A. 2d 541, 545 (Pa. Super. 2003) (before an individual can be held negligent *per se*, his violation of the statute must cause the kind of harm the statute was intended to avoid and cause that harm to a person within the class of persons the statute was intended to protect). The plain and unambiguous reading of Section 4-497 is that its purpose is to "protect an individual's rights from the harm caused by the negligent service of alcohol." *See Zygmuntowicz v. Hospitality Investments, Inc.*, 828 F. Supp. 346, 349 (E.D. Pa. 1993).

Recently, the Superior Court of Pennsylvania determined that a police officer, who responded to a call regarding an unruly patron at a bar, and was assaulted and injured by the bar patron when he attempted to intervene, fell outside the protected class of people the code section was designed to protect. See *Juszczyszyn v. Taiwo*, 113 A.3d 853, 859 (Pa. Super. 2015).

Turning to the instant case, Encompass alleges in its Complaint (and in its Brief in Opposition to the Motion to Dismiss) that Stone Mansion and Viviani were joint tortfeasors in the underlying lawsuit. Because Encompass (on behalf of Viviani) paid Hoey to extinguish all of her claims (including those she could have made against Stone Mansion), Encompass argues that "[u]nder Pennsylvania Law, the Stone Mansion and Viviani's Estate are joint tortfeasors and

Viviani's Estate, ***and by extension*** Encompass, is entitled to contribution from the Stone Mansion for the payments made by Encompass." Doc. no. 13, p. 5 (emphasis added).

Based on the above cited law, the Court concurs with Stone Mansion and finds that Encompass cannot "by extension" obtain contribution, because Section 4-497 only creates a right of recovery in the injured party for damages inflicted upon him (or her) – no one else. There are no "extensions" contemplated by this section of Pennsylvania's liquor code. Indeed, as noted above, the Pennsylvania Superior Court in *Juszczyszyn*, held that a police officer who was assaulted by a bar patron was not considered, "by extension," to be an injured party who suffered damages as contemplated by Section 4-497. Therefore, this Court is constrained to see how Encompass could, "by extension," obtain contribution from Stone Mansion vis-a-vis Section 4-497.

The instant lawsuit brought by Encompass alleges a claim predicated upon the violation of a section of the liquor code (Section 4-497), and Encompass contends repeatedly that it "stands in the shoes" of its tortfeasor-insured (Viviani). Encompass needs to "stand in the shoes" of its tortfeasor-insured (Viviani) in order to invoke Pennsylvania's UCATA provision, to obtain contribution from another tortfeasor.[1] The problem with Encompass' argument is that the "other tortfeasor" is a liquor license holder (Stone Mansion) whose liability is limited by Section 4-497 of Pennsylvania's liquor code.

Section 4-497 only allows <u>third persons</u> to recover against a liquor license holder (like Stone Mansion) for the injuries inflicted upon <u>them</u>. Here it is Hoey, not Viviani, who was the

---

[1] The relevant portion of Pennsylvania's UCAJTA upon which Encompass relies reads:

> As used in this subchapter "joint tort-feasors" means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.

42 Pa.C.S.A. § 8322.

"third person" that was injured in the underlying scenario. Accordingly Hoey, not Viviani, possessed the potential right to recover against the liquor license holder, assuming she could prove that the liquor license holder (Stone Mansion) served Viviani when he was visibly intoxicated.

As it expressly states in both its Complaint and its Brief in Opposition to the Motion to Dismiss, Encompass is **not** standing in the shoes of Hoey, and thus, this Court concludes that it cannot recover against Stone Mansion under Section 4-497.

### IV. Conclusion

The plain, unambiguous reading of Section 4-497 indicates that a licensee, such as Stone Mansion, is liable only to <u>third persons</u> (Hoey in this case), for damages inflicted upon the third person - off the licensee's premises - by a customer of the licensee (Viviani in this case), but only when the licensee furnishes that customer (Viviani) with alcohol when he was visibly intoxicated. Section 4-497, with its limited scope, indicates that Stone Mansion may have been liable to Hoey – depending upon whether Stone Mansion served Viviani alcohol while he was visibly intoxicated. Encompass' Complaint establishes that Encompass is acting as if it were Viviani in order to recover under Pennsylvania's Uniform Contribution Among Tortfeasors Act. Because these is no potential cognizable claim under 4-497 as between Viviani/Encompass and Stone Mansion, there is likewise no claim for contribution, and thus, Stone Mansion's Motion to Dismiss will be granted.

Given the state of the law on this matter, as discussed in greater detail above, any amendment would be futile and thus, Defendant's Motion to Dismiss will be granted with prejudice. See, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997)

(" . . . a district court may exercise its discretion and deny leave to amend on the basis of . . . futility."). An appropriate Order of Court will follow.

s/Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All Registered ECF Counsel and Parties