IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ENCOMPASS INSURANCE COMPANY,

           Plaintiff,                    17cv0125
                                       ELECTRONICALLY FILED

              v.

STONE MANSION RESTAURANT, INC.,

            Defendant.

## MEMORANDUM OPINION

This case began with Encompass suing Stone Mansion for contribution, pursuant to the

Uniform Contribution Among Tortfeasors Act ("UCATA"). The case was originally filed in the

Court of Common Pleas of Allegheny County, Pennsylvania, but was removed to this Court by

Defendant. After this Court denied Plaintiff's Motion for Remand, Defendant filed a Motion to

Dismiss, which this Court granted. Plaintiff appealed this Court's Orders to the United States

Court of Appeals for the Third Circuit. The Court of Appeals concluded that this matter was

properly removed to this Court and affirmed this Court's decision to retain the matter and not

remand this case back to the Court of Common Pleas. However, the Court of Appeals reversed

this Court's decision with respect to the dismissal of the action.

After receiving the mandate from the Court of Appeals, this Court requested the Parties

provide supplemental briefing:

> [O]n the issue raised in *Puller v. Puller* wherein Pennsylvania's Supreme
> Court held that "contribution is not a recovery for the tort . . . [,] but the
> enforcement of an equitable duty to share liability for the wrong done."
> Specifically, this Court would like the Parties to focus their briefing on
> Encompass' "right to receive contribution from a joint tortfeasor
> deriv[ing] not from [its] liability to the claimant but rather from the
> equitable principle that once the joint liability of several tortfeasors has
> been determined, it would be unfair to impose the financial burden of the

plaintiff's loss on one tortfeasor to the exclusion of the other."  In addition, the Court would like the Parties to explain if, and/or how, joint liability of the tortfeasors was determined in the underlying case at bar.

ECF 26.

The Parties have completed their briefing, making this matter ripe for adjudication.


## I. FACTUAL BACKGROUND

Encompass, an automobile insurance carrier, paid $600,000.00 on a personal injury claim to Helen Hoey ("Hoey").  This payment was made after Encompass' insured, Brian Viviani ("Viviani"), caused a one-car motor vehicle accident which left Viviani dead and Hoey (Viviani's passenger) injured.

On the evening of March 20, 2011, Viviani consumed alcohol at Stone Mansion, allegedly furnished by the restaurant.  Encompass further alleges that Stone Mansion continued to serve Viviani alcohol even after he became visibly intoxicated.

Upon leaving Stone Mansion after consuming alcohol, Vivani drove an automobile with Hoey as his front seat passenger, struck a guardrail, which caused the car to flip over, ultimately landing on its roof.  Encompass alleges that this accident which led to Hoey's injuries and Viviani's death, was solely due to the alcohol that Viviani was served at Stone Mansion.


## II. PROCEDURAL BACKGROUND

### A. The Underlying Lawsuit in State Court

Almost two years after the accident occurred, Hoey filed a lawsuit against Viviani's estate in the Court of Common Pleas of Allegheny County at docket no. GD-13-004894. Viviani's estate attempted to join Stone Mansion.  See Motion for Leave to Join Additional

Defendant, filed 9/19/2014 at GD-13-004894. Hoey objected to Viviani's Motion for Leave to Join Stone Mansion, claiming that Viviani's attempt to join Stone Mansion was late. See Preliminary Objections to Motion for Leave to Join, filed 9/19/2014 at GD-13-004894. The Court of Common Pleas sustained Hoey's Preliminary Objections, thereby precluding Viviani from joining Stone Mansion as a defendant in the underlying lawsuit. See Order of Court, filed 9/22/2014 at GD-13-004894. Hoey settled with Viviani's estate prior to trial. Encompass paid $600,000.00 in settlement proceeds to Hoey on behalf of Viviani, without any judicial determination of liability among tortfeasors.

### B. The Federal Lawsuit

Encompass brought the instant action to recover at least some of what it paid to Hoey on Viviani's behalf. Encompass filed the instant lawsuit in state court (which Stone Mansion removed to this Court) in an attempt to recover from Stone Mansion.

Encompass' basis for its claim against Stone Mansion is predicated upon Pennsylvania's Uniform Contribution Among Tortfeasors Act ("UCATA"). Simply put, Encompass alleged in this lawsuit, that on the night of the accident (March 20-21, 2011), Stone Mansion served Viviani alcohol while he was visibly intoxicated in violation of a Pennsylvania liquor law, making Stone Mansion a proximate cause of Viviani's accident and death, as well as Hoey's injuries. Id., at ¶¶ 42-45.

Encompass further alleged that Stone Mansion is a joint tortfeasor with Encompass' insured, Viviani, with respect to Hoey's injuries. Id., at ¶¶ 46-47. Encompass claimed that because it settled the lawsuit brought by Hoey, paid her $600,000.00, and in exchange, obtained a general release from her, Encompass has the right to recover contribution from Stone Mansion under Pennsylvania's UCATA. Id., at ¶¶ 48-52.

Stone Mansion's Brief in support of its Motion to Dismiss conceded that if there is a cognizable claim for contribution, then Pennsylvania's UCATA would "provide the vehicle" by which contribution could be obtained. Stone Mansion argued that a cognizable claim between itself and Encompass does not exist; and thus, argued that the UCATA never comes into play. Doc. no. 8, p. 3.

Stone Mansion contended that the section of Pennsylvania's liquor code upon which the underlying claim against Stone Mansion was predicated, prohibited Encompass from recovering contribution from Stone Mansion. Id. Stone Mansion argued that Encompass is not seeking damages on account of harm inflicted upon Encompass itself, but rather on behalf of Hoey, even though Hoey did not make any claim on behalf of herself against Stone Mansion. Id.

Encompass countered by essentially arguing that it was "stand[ing] in the shoes" of Viviani as a result of its $600,000.00 payment, a fact which Stone Mansion conceded. Doc. no. 13, p. 5. Encompass next contended that by operation of the UCATA, Stone Mansion and Viviani were joint tortfeasors such that Viviani, "and by extension Encompass," was entitled to contribution from Stone Mansion for the $600,000.00 payment made by Encompass. Id.

Stone Mansion replied that in order for Encompass to recover, Encompass would need to "stand in the shoes" of Hoey (not Viviani), and thereby trigger the application of the section of the Pennsylvania liquor code ("the Dram Shop Act"), which, as previously argued, provided the basis from which a liquor licensee such as Stone Mansion could be held liable. Doc. no. 15, p. 3. Stone Mansion further argued that only injured third parties (like Hoey) could recover damages from a liquor licensee (like Stone Mansion) for injuries inflicted upon them. Id.

This Court agreed with the position taken by Stone Mansion finding that there was no legally cognizable claim under the Dram Shop Act as between Encompass (standing in the shoes

of Viviani) and Stone Mansion, and thus, Encompass' contribution claim did not exist. This Court, therefore, dismissed the Complaint.

Encompass appealed this Court's Order and the Court of Appeals reversed this Court's decision. The Court of Appeals prepared an Opinion to this extent and issued its Mandate. This Court after careful reflection on the Opinion and Mandate and after receiving supplemental briefs from the Parties now provides the analysis which follows.

## III. ANALYSIS

The basis for the Court of Appeals' reversal was that UCATA applies so as to allow Encompass to recover from Stone Mansion, regardless of what Pennsylvania's Dram Shop Act, 47 P.S. § 4-497 states.

As noted and quoted by the Court of Appeals, the Pennsylvania Superior Court when interpreting UCATA held:

> "The focus of the [UCATA] is on the relationship existing between tortfeasors rather than the manner in which several tortfeasors have been held liable to an injured claimant. In *Puller v. Puller*, [ ] 110 A.2d 175, 177 (1955), the [Pennsylvania] Supreme Court observed that "contribution is not a recovery for the tort . . . [,] but the enforcement of an equitable duty to share liability for the wrong done." Thus, a tortfeasor's right to receive contribution from a joint tortfeasor derives not from his liability to the claimant but rather from the equitable principle that **once the joint liability of several tortfeasors has been determined**, it would be unfair to impose the financial burden of the plaintiff's loss on one tortfeasor to the exclusion of the other. It matters not on which theory a tortfeasor has been held responsible for the tort committed against the plaintiff. So long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable under the [UCATA] to deny that party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury."

*Encompass Ins. Co. v. Stone Mansion Restaurant, Inc.,* 902 F.3d 147, 155-56 (2018), *quoting*

*Svetz for Svetz v. Land Tool Co.,* 513 A.2d 403, 407 (Pa. Super. 1986) (emphasis added). [1]

The threshold predicate for application of UCATA is a determination of liability among

joint tortfeasors. <u>To date in this case, there simply has been no such determination</u>. Hence, the

Court of Appeals reversed this Court's prior dismissal and remanded the matter back to this

Court for further adjudication.

Accordingly, consistent with the Court of Appeals' analysis, since there was no

"determination of liability among joint tortfeasors" in the underlying State Court action, equity

does not compel a result that would now enable Encompass to seek contribution from an alleged

joint tortfeasor under UCATA in the absence of any determination of liability among Encompass

and Stone Mansion.

---

[1] The Court of Appeals noted in its Opinion that, "Encompass does not argue that it is entitled to recovery in tort against Stone Mansion" because "[s]uch a claim would likely fail pursuant to [the Pennsylvania Dram Shop Act's] limiting provision." *Encompass,* 902 F. 3d at 156. The Court of Appeals also noted that Encompass presented a "distinct claim for contribution under the UCATA" and further held that the "Dram Shop Act would not prohibit this manner of recovery." *Id.*

Importantly, the key facts of the *Svetz* case differed greatly from those presented here. In *Svetz,* a product liability case, the trial court refused to allow the defendant manufacturer of motorcycle helmets from joining a bar who had allegedly served the decedent while visibly intoxicated before he operated his motorcycle, finding that the Dram Shop claim was predicated in negligence and negligence claims could not be brought within a product liability suit. Disagreeing, the Superior Court reversed and remanded the matter to the trial court.

The key difference here and with *Svetz* is that UCATA was deemed to properly be applied to effectuate contribution among joint tortfeasors where one tortfeasor was adjudged liable of negligence and the other liable of strict products liability. *See also Herndon Boro Jackson tp. Jt. Muni. Auth. v. Pentair Pump Group, Inc*., 2015 WL 2166097, 4:12-cv-01116 (M.D. Pa. May 8, 2015). In *Svetz,* it was noted that UCATA focuses on the relationship existing among tortfeasors "rather than the manner in which several tortfeasors have been liable to an injured claimant," but this simply meant that a defendant who was deemed liable because of negligence (such a bar or tavern) could be a joint tortfeasor with another entity who was deemed liable under a strict product liability theory (such a helmet manufacturer). *Id*. Simply put, as long as both – the defendant and the other entity or entities – were tortfeasors, they could obtain contribution from the other. *Id.*

Thus, this Court may award contribution to Encompass, but only after Encompass, who bears the burden of proof, proves that it is entitled to such equitable relief. In order to do this, Encompass must prove that Stone Mansion is a tortfeasor whose liability has been determined, and therefore, by operation of UCATA, Stone Mansion must bear its *pro rata* share of liability.

Typically, by the time an insurance company seeks contribution from a third party, there has been a determination of liability of the third party(ies) in the underlying insurance dispute. This case is somewhat unique in that there has been no determination of liability of any party in the underlying lawsuit. UCATA and Pennsylvania substantive law interpreting UCATA clearly states that there must be a determination of liability in order for one tortfeasor to equitably obtain relief from another – this is a threshold requirement which must be met before the application of the UCATA can take place.

In the underlying case, Encompass (the Plaintiff here) voluntarily settled the matter before any liability determination could be made. Although Encompass chose to terminate the case before anyone or anything was adjudicated liable to the injured party, and although Encompass, who "stood in the shoes" of its insured in the underlying matter, was precluded from joining Stone Mansion in the underlying lawsuit, Encompass now claims it is: (1) entitled to equitable relief on behalf of that same insured who never claimed or was judged to be liable; and (2) entitled to equitable relief from Stone Mansion who was never a party in the underlying lawsuit, despite Encompass' prior failed efforts to join the restaurant, and thus, was never judged liable.

In short, there has been no determination (and presumably no admission) establishing that Encompass' insured was liable, causing Encompass to pay in excess of its insured's share of liability – a threshold contingent precedent under Pennsylvania law (as reiterated in the instant

matter by the Court of Appeals for the Third Circuit) for the application of UCATA.  If anything, a fair inference is that in choosing to voluntarily settle this matter after the State Court refused to allow Encompass/Viviani to late-join Stone Mansion, Encompass agreed to pay an amount that it deemed reasonable to extinguish its insured's liability to Plaintiff as there were no other claims pending by Plaintiff (Hoey) or by Defendant (Encompass' insured, Viviani), against any other Defendants.

## V. CONCLUSION

To this end, the Court will allow some limited discovery to proceed in this case. The Parties are encouraged to focus on developing evidence based on the foregoing analysis.  For example, Encompass will bear the burden of showing how the insured and Stone Mansion were joint tortfeasors in the underlying action such that Encompass is entitled to an equitable remedy under its claim for contribution.  Thus, Encompass will need to adduce evidence supporting these legal conclusions. Conversely, Stone Mansion in its own defense may wish to adduce evidence showing no party was ever deemed to be liable in the underlying lawsuit.

At the close of discovery, the Parties may file cross motions for summary judgment.  An appropriate Order will follow.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All Registered ECF Counsel and Parties