IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ENCOMPASS INSURANCE COMPANY,

        Plaintiff,                      17cv0125
                                              ELECTRONICALLY FILED
        v.

STONE MANSION RESTAURANT,
INCORPORATED,

        Defendant.

**MEMORANDUM OPINION**

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment ([ECF 53](#)), Brief in Support ([ECF 55](#)), and Concise Statement of Facts ([ECF 54](#)). Defendant filed a Brief in Opposition ([ECF 58](#)), Plaintiff filed a Reply Brief ([ECF 60](#)) and Defendant filed a Sur-Reply Brief ([ECF 63](#)). The matter is now ripe for adjudication. For the following reasons set forth below, the Court will deny the Plaintiff's Motion for Partial Summary Judgment.

**I. RELEVANT FACTUAL AND PROCEDURAL HISTORY**

    **A. The Underlying State Court Lawsuits**

Encompass Insurance Company ("Encompass"), Plaintiff herein, an automobile insurance carrier, paid $600,000.00 on a personal injury claim to Helen Hoey ("Hoey"). Encompass' insureds, Ernest and Kimberly Simon ("Simons") had given their 2005 Audi convertible to Bryan Viviani ("Viviani") to conduct service and/or repairs on the vehicle. On March 20-21, 2011, Viviani drove Simon's Audi to an event hosted by Hoey at the Stone Mansion – a restaurant and bar in Franklin Park. By the end of the event, Hoey became the front-seat

passenger in Simon's Audi, and Viviani was the driver.  Shortly after departing the Stone Mansion, the Audi was involved in a one-car motor vehicle accident which left Viviani dead and Hoey injured.

On July 25, 2013, Hoey filed a lawsuit against Viviani's estate in the Court of Common Pleas of Allegheny County at docket no. GD-13-004894 (the underlying action"), seeking damages for the personal injuries she sustained during the automobile accident of March 21, 2011.  Viviani's estate attempted to join Stone Mansion.  See Motion for Leave to Join Additional Defendant, filed 9/19/2014 at GD-13-004894.  Hoey objected to Viviani's Motion for Leave to Join Stone Mansion, claiming that Viviani's attempt to join Stone Mansion was late.  See Preliminary Objections to Motion for Leave to Join, filed 9/19/2014 at GD-13-004894.  Hoey noted that the July 25, 2013 Complaint contained allegations which specifically stated that Viviani was driving while under the influence of alcohol.  Id.  Also, Hoey's Preliminary Objections noted that during her deposition she identified Woodside Grille, owned by Stone Mansion, as the bar which served Viviani on the night of the accident; but, despite her clear identification of the bar in question, more than 60 days elapsed from the date of her identification of the bar to the date the Motion for Joinder was filed.  Id.

The Court of Common Pleas sustained Hoey's Preliminary Objections, thereby precluding Viviani from joining Stone Mansion as a defendant in the underlying action.  See Order of Court, filed 9/22/2014 at GD-13-004894.

On July 16, 2015, nearly two years after Hoey filed her lawsuit against Viviani, Encompass filed a declaratory judgment action in the Court of Common Pleas of Allegheny County at docket no. GD-15-012457 ("the coverage action"), seeking a declaration that it owed

no duty to defend or indemnify Viviani's estate administrator, Patrick Connelly, with respect to the claims alleged by Hoey in the underlying action.

On October 19, 2016, Encompass settled the underlying action with Hoey for $600,000. As a result of the settlement in the underlying action, the coverage action became moot so Encompass discontinued its declaratory judgment action.

**B. The Current Lawsuit**

Encompass brought the instant action to recover at least some of the $600,000.00 it paid to Hoey from Stone Mansion.

In the Complaint in the instant matter, Encompass asserts a claim for contribution under Pennsylvania's Uniform Contribution Among Tortfeasors Act, "), 42 Pa.C.S.A. § 8321 et seq. See doc. no. 1-2, ¶¶ 37-52. In a nutshell, Encompass alleges that on the night of the accident, March 20-21, 2011, Stone Mansion served Viviani alcohol while he was visibly intoxicated in violation of a Pennsylvania liquor law, making Stone Mansion a proximate cause of the automobile accident and Hoey's injuries. Id., at ¶¶ 42-45.

Encompass further alleges that Stone Mansion is a joint tortfeasor with Encompass' insured, Viviani, with respect to Hoey's injuries. Id., at ¶¶ 46-47. Encompass claims that because it settled the lawsuit brought by Hoey, paid her $600,000.00, and in exchange, obtained a general release from her, Encompass has the right to recover contribution from Stone Mansion under Pennsylvania's UCATA. Id., at ¶¶ 48-52.

In its Motion for Partial Summary Judgment, Encompass notes that there is no dispute between Encompass and Stone Mansion that: (1) Encompass paid $600,000.00 to settle all claims brought by Hoey arising out of the motor vehicle accident on March 20-21, 2011; and (2) Hoey accepted Encompass' $600,000.00 payment in exchange for a release of all claims she

had as the result of the accident. Encompass argues that if a jury were to determine that Stone Mansion is a joint tortfeasor in the underlying action, then Encompass has "necessarily paid more than its pro rata share of the liability." Encompass requests that this Court enter partial judgment setting the amount of damages in the instant case at $600,000.00, and order the case to be tried only to determine if Stone Mansion was a joint tortfeasor and to determine the respective liability of Stone Mansion and Bryan Viviani.

In its Brief in Opposition to the Motion for Partial Summary Judgment, Stone Mansion claims that if this Court were to enter an Order setting the amount of damages in the instant case at $600,000.00, this Court will have decided, as a matter of law, that Encompass was, in fact, a tortfeasor, and that $600,000.00 was a reasonable amount to pay to Hoey.

## II. STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – *i.e.*, depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question. *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004), quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001), quoting Celotex, 477 U.S. 317, 325 (1986).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007), citing *Anderson*, 477 U.S. at 255.

**III. DISCUSSION**

The claim in the instant lawsuit arises out of the Uniform Contribution Among Joint Tortfeasors Act ("the Act"), 42 Pa.C.S.A. § 8321 et seq. The Act was designed "to establish generally the existence of the right of contribution among joint tortfeasors and to provide the procedure whereby that right might be made effective in practice." *Swartz v. Sunderland*, 169 A.2d 289, 291 (Pa. 1961).

The Act defines joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa.C.S.A. § 8322. The burden is on the party seeking contribution to establish a joint tortfeasor relationship. *Small Bus. Admin. v. Progress Bank*, No. Civ.A. 03-3461, 2004 WL 2980412, at *10 (E.D. Pa. Dec. 22, 2004).

In order for a settling party (in this case, Encompass), to recover under the Act, the settling party must: (1) be a tortfeasor; (2) establish joint liability with another (in this case, Stone Mansion); and (3) have extinguished the liability of the other joint tortfeasor to the injured party. 42 Pa.C.S.A. §§ 8322, 8324(c); *see also, Swartz*, 169 A.2d at 291 ("[T]wo conditions must exist before the right of contribution arises, namely, (1) that one joint tort-feasor has discharged the common liability or paid more than his prorata share; (2) that the liability of the other joint tort-feasor to the injured persons has been extinguished by the settlement."). A party can pursue a claim for contribution only if it has established that it was itself liable to the injured party for that party's injury. *Kirshbaum v. WRGSB Assocs.*, 243 F.3d 145, 156 (3d Cir. 2001). In other words, the fact that a person paid money to settle the claim of an injured party is not a sufficient basis for recovery; the joint tortfeasor relationship must also be established. *Slaughter v. Pennsylvania X-Ray Corp.*, 638 F.2d 639, 642 (3d Cir. 1981). Thus, if the payor is not a

6

tortfeasor, his payment would be that of a volunteer and would not support a claim for contribution. *Id.*

When a party seeks contribution in a separate action against a purported joint tortfeasor, it "must stand in the shoes of th[e] original plaintiff and prove that the new defendant was a joint tortfeasor in that his tortious conduct also caused the harm at issue." *Mattia v. Sears, Roebuck & Co.*, 531 A.2d 789, 791 (Pa. Super. Ct. 1987). Generally, when "settlement occurs before the injured plaintiff has proven his original case at trial, the settling tortfeasor cannot enforce his right to contribution unless in a separate proceeding he proves that: (1) the settlement figure was reasonable[; and] (2) the parties from whom he seeks contribution were in fact joint tortfeasors. *Nationwide Mut. Ins. Co. v. Philadelphia Elec. Co*., 443 F. Supp. 1140, 1143 (E.D. Pa. 1977).

Turning to the instant matter, Encompass seeks a partial judgment from this Court to set the damages in this contribution case at $600,000.00. It is undisputed that Encompass paid $600,000.00 to settle all claims brought by Hoey arising out of the March 20-12, 2011, automobile accident. However, as noted above, Encompass' payment does not automatically render Encompass a "tortfeasor" who may seek contribution from other tortfeasors under the Act.

Encompass bears the burden of proving it is entitled to contribution from Stone Mansion. In this regard, Encompass must first show that it is a tortfeasor. Having paid money to settle a claim is insufficient to establish a claim for contribution – the joint tortfeasor relationship must be established between Encompass and Stone Mansion, and Encompass bears the burden of proving its own tortfeasor status as well as that of Stone Mansion. *See Kirshbaum,* 243 F.3d at 156 ("A party pursuing claims for contribution and indemnity can do so only if it has established that it was itself liable to the plaintiff for the plaintiff's injury.").

To meet its burden of proving that Encompass did not voluntarily pay $600,000.00, but was in fact, a tortfeasor, Encompass alleges in its Reply Brief (ECF 60, p. 3) that "it stands in the shoes of Viviani" (the individual who drove the vehicle insured by Encompass on the night in question). In its Complaint, Encompass alleges that Viviani's Estate tendered Viviani's defense to Encompass which Encompass undertook and retained counsel to defend Viviani's Estate in the underlying action. ECF 1-2, ¶¶ 29-30.

However, Encompass's Complaint also notes that it did not insure Viviani – it insured the owners of the vehicle – Ernest and Kimberly Simon – who turned their vehicle over to Viviani. Stone Mansion contends that the insureds (Simons) gave the vehicle to Viviani for service and/or repairs.

When Viviani drove the car on the evening in question, he did so either with or without the permission of the vehicle's owners. Encompass filed a coverage action during the pendency of the underlying action, seeking a judicial declaration as to whether it owed a duty to indemnify and/or defend Viviani in the underlying action. Encompass discontinued its coverage action after paying $600,000.00 to Hoey, before a coverage declaration could be issued by the Court of Common Pleas.

Thus, Stone Mansion argues that there is an open question of whether coverage was actually owed under Encompass' policy, or whether Encompass made a voluntary payment to Hoey.[1] The former would render Encompass a tortfeasor who would be free to seek contribution

---

[1] Encompass argues that Stone Mansion, in its Answer to Encompass' Complaint, failed to raise an affirmative defense asserting "voluntary payment," and thus, may not now argue that Encompass' $600,000.00 payment was a voluntary payment. However, this Court notes that Stone Mansion's First and Twenty-First Affirmative Defenses, whereby Stone Mansion avers that Encompass' "Complaint for Contribution fails to state a claim upon which relief can be granted, in whole or in part, as a matter of law" and "Stone Mansion raises the provisions of the Pennsylvania Uniform Contribution Among Tortfeasors Act and claims the benefit of all defenses to which it may be entitled pursuant to said Act," are sufficient to place Encompass on notice that a "voluntary payment" argument could be made.

from other tortfeasors, the latter would not.

Although Encompass retained a law firm to defend Viviani's estate in the underlying action, and then paid Hoey $600,000.00 to settle her claims against Viviani's estate, Encompass also initiated a declaratory judgment action seeking a determination as to whether it owed coverage and a defense to Viviani's estate. In fact, Encompass prepared a Motion for Summary Judgment in its coverage action stating in relevant part as follows:

> 11. The Encompass insureds, Ernest and Kimberly Simon, had their vehicles serviced by Decedent, Bryan K. Viviani and Viviani Motor Sports, LLC., and prior to the March 21, 2011 motor vehicle accident, Ernest Simon had arranged for Decedent Viviani to retrieve the 2005 Audi A4 from the Simon home and drive it to Viviani Motor Sports for repair.
>
> 12. Encompass insured, Ernest Simon, gave Decedent, Bryan K. Viviani permission to drive the 2005 Audi A4 from the Simon home to Viviani Motor Sports for repair and back to the Simon home, and to test drive the 2005 Audi A4 to ensure that whatever repairs the Decedent Viviani and/or representatives of Viviani Motor Sports made corrected the problem with the vehicle.
>
> 13. Encompass insureds, Ernest and Kimberly Simon, did not loan their 2005 Audi A4 to the Decedent, Bryan K. Viviani for personal use, nor did they give Viviani permission to drive the 2005 Audi A4 for Viviani's personal use.
>
> \*   \*   \*
>
> 20. Defendant Hoey testified that she knew the car Mr. Viviani was driving that night belonged to Ernest Simon because she accompanied Mr. Viviani when he had driven the Audi convertible to Mr. Simon's house a few days prior to the accident, at which time Mr. Viviani helped Mr. Simon move a refrigerator. (citation omitted).
>
> 21. Defendant Hoey testified that Mr. Viviani had explained to her that he was driving the car because Mr. Simon had asked him to perform service on the vehicle. (citation omitted).
>
> \*   \*   \*
>
> 24. Ernest Simon testified that at the time of the March 21, 2011 accident, Mr.

---

Encompass also argues in its Sur-Reply Brief that it could amend its Answer (with the Court's permission), if the Court so required. The Court finds that such an amendment is not required.

Viviani had possession of the 2005 Audi convertible in order to perform repairs. Mr. Simon specifically testified that he did not loan the vehicle to Mr. Viviani for any purpose, and the only reason Mr. Viviani would have driven the Simon vehicle was because the car was in need of repairs. (citation omitted).

25. Mr. Simon testified that Decedent Viviani was given permission to drive the Audi to his repair shop, road test it as needed in connection with whatever repairs were needed, and then to return the vehicle to Mr. Simon. Mr. Simon specifically denied having given Mr. Viviani permission to drive the Audi "as his own car" or to use the vehicle while out on a date. (citation omitted).

\* \* \*

29. An owner of a motor vehicle has the legal right to restrict the permissive use of that vehicle by third persons. (citation omitted).

30. In order for coverage to be afforded under the [Encompass insurance] Policy issued to Ernest and Kimberly Simon, it must be shown that Decedent Viviani had to have been operating the 2005 Audi A4 vehicle at the time of the accident with the permission and within the scope of the permission of the car's owners, Ernest and Kimberly Simon.

ECF 69-3.

Based on the foregoing, Encompass clearly did not accept (at least initially) that it owed Viviani's estate coverage for the motor vehicle accident which injured Hoey. Yet, at some point in in time, for some reason(s), Encompass withdrew its coverage action and settled the claims in the underlying action paying Hoey the $600,000.00, as a settlement of all claims with respect to the automobile accident on behalf of the tortfeasor, Viviani. Based on all of the above facts, the net result is that it is as likely that Encompass may be considered a "tortfeasor" (because it stands in the shoes of Viviani) for purposes of seeking contribution from Stone Mansion, as it is likely that Encompass made a voluntary payment to Hoey. Thus, Encompass will have to prove first and foremost that it is a tortfeasor in the instant matter.

Next, Encompass must prove that Stone Mansion was also a tortfeasor. To do this, Encompass will need to prove that employees of the Stone Mansion served Viviani on the night

in question while Viviani was visibly intoxicated. There is no judgment this Court could or would enter on this purely factual issue at this juncture of the proceedings. Encompass will bear the burden of proving at the time of trial that Stone Mansion served Viviani while he was visibly intoxicated, thereby rendering Stone Mansion a joint tortfeasor. Thus, summary judgement on this issue is not appropriate.

Third, while there is no dispute that Encompass paid $600,000.00 to Hoey, Stone Mansion questions whether the $600,000.00 payment amount was, in fact, a "reasonable" amount to pay Hoey for a release of all claims arising from the automobile accident. Although Encompass argues that the $600,000.00 paid to Hoey was a "bargain" given the purported extent and/or nature of Hoey's injuries, Stone Mansion notes that there has been no stipulation, finding, or separate proceeding to determine the reasonableness of the $600,000.00 sum. Moreover, case law cited refenced by the Parties suggests that the reasonableness of the payment is a question for the fact-finder. Thus, the Court concurs with Stone Mansion on this point as well and finds that Encompass must prove the reasonableness of the $600,000.00 payment.

## IV. CONCLUSION

Given the foregoing law and authority, this Court will DENY Encompass' Motion for Partial Summary Judgment. An appropriate Order shall follow.

s/Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:    All Registered ECF Counsel and Parties